FILED

16 SEP -8 AM 8:45

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA



# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                        Plaintiff,<br>v.<br><br>DAVID DIAZ-ROJAS,<br><br>                      Defendant. | Case No.:  16CR0423-MMA (KSC)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO COMPEL, AND DENYING GOVERNMENT'S EX PARTE APPLICATION FOR PROTECTIVE ORDER**<br><br>**Doc. Nos. 36; 39** |

Currently pending before the Court is defendant's Motion to Compel[1] [Doc. No. 16] and the government's *Ex Parte* Application for Protective Order [Doc. No. 39] (under seal). Portions of the Motion and Application were referred to this Court for report and recommendation, pursuant to Title 28, United States Code, Section 636(b)(1)(A)-(B), and Criminal Local Rule 57.4, by the Honorable Michael M. Anello. [Doc. No. 41.] For the

---

[1]  Only the portions of the Motion to Compel pertaining to the "dog discovery" and the Highway 86 Checkpoint were referred to this Court by the Honorable Michael M. Anello. [Doc. No. 41, at p. 2.] Other issues raised in the Motion to Compel, *i.e.*, defendant's cell phone(s), have not been referred to this Court for Report and Recommendation. Additionally, defendant filed a Supplemental Briefing on Motion to Compel Canine Discovery on July 22, 2016 [Doc. No. 36] (under seal), which further limited defendant's initial request for relief contained in the Motion to Compel [Doc. No. 16].

1

reasons addressed more thoroughly below, defendant's Motion to Compel is **GRANTED** in part and **DENIED** in part. [Doc. No. 36] (under seal). Additionally, the government's *Ex Parte* Application for Protective Order is **DENIED**. [Doc. No. 39] (under seal).

## FACTUAL BACKGROUND

On February 3, 2016, at approximately 11:30 a.m., defendant arrived at the primary inspection booth of the Highway 86 Checkpoint in a white Ford Explorer.[2] He was the driver and sole occupant in the vehicle. Agent Victor Ibarra worked the primary booth that day and asked defendant about his country of citizenship. Defendant responded that he was a legal permanent resident and presented his I-551 card.

While defendant was in primary inspection, Agent Gabriel Barragen had his dog, "Pecky", conduct sniffs of defendant's Explorer. Agent Barragan and Pecky are certified in detection of various drugs and concealed humans. Pecky alerted to the Explorer's rear passenger and rear drive undercarriage. Agent Barragan notified Agent Ibarra of the dog alert. Agent Ibarra referred defendant and the Explorer for secondary inspection. Agent Barragan had Pecky conduct additional sniffs at the secondary inspection. Pecky alerted to the same location in the secondary area. The government contends that defendant verbally consented to the search of his vehicle. The defense denies that consent was given.

The Border Patrol agents then conducted a more thorough search of the vehicle. Approximately eleven kilograms of cocaine and six kilograms of methamphetamine were discovered in the Explorer in an after-market compartment above the gas tank. Defendant is charged in a two-count Information with unlawfully possessing with intent to distribute cocaine and methamphetamine, in violation of Title 21, United States Code, Section 841(a)(1). *See* [Doc. No. 12.]

---

[2] The Court's recitation of the factual background is limited to the information germane to the Motion to Compel and the *Ex Parte* Application for a Protective Order currently before the Court.

## PROCEDURAL BACKGROUND

Defendant seeks an order compelling the government to produce various items of discovery relevant to the issues raised in his Motion to Suppress. Defendant requests, *inter alia,* discovery related to the qualifications and performance of the narcotics detector dog that alerted to his vehicle. The District Judge vacated the May 9, 2016 Motion hearing to provide the parties with sufficient time to meet and confer regarding the discovery issues raised in defendant's Motion and to allow for supplemental briefing, if necessary. [Doc. No. 23.]

The parties met and conferred regarding the discovery dispute on June 9, 2016. [Doc. No. 36, at p. 1.] As a result of the conference, the parties requested that the Court enter a Stipulated Protective Order pursuant to Rule 16(d) of the Federal Rules of Criminal Procedure with regard to all discovery related to the full list of materials in Defendant's Motion to Compel [Doc. No. 16], and the training performance records of United States Border Patrol Agent Barragan and his canine, Pecky. [Doc. No. 24.] The Joint Motion for a Stipulated Protective Order was based in part on the sensitive law enforcement nature of the records defendant seeks. *Id.* The Court granted the request and issued the Stipulated Protective Order on July 8, 2016. [Doc. No. 26.]

Following the entry of the Stipulated Protective Order, the government filed an *Ex Parte* Application for Protective Order [Doc. No. 39.] Additionally, defendant filed a Supplemental Briefing on Motion to Compel Canine Discovery on July 22, 2016. [Doc. No. 36.] Therein the parties narrowed the canine discovery dispute to three categories of documents which are now before this Court for determination. *Id.* at 2. The Court will address each category in turn, along with the Motion to Compel discovery related to the Highway 86 Checkpoint.

## MODIFICATION OF PROTECTIVE ORDER TO INCLUDE "ATTORNEYS' EYES ONLY PROVISION"

A Status Hearing was held on August 24, 2016, during which the Court discussed with the parties the possibility of modifying the Stipulated Protective Order to include an

Attorneys' Eyes Only ("AEO") provision. This addition would allow defense counsel and their retained experts to review the proposed redacted material, but would expressly exclude the defendant from viewing the material designated as such. Both parties agreed that modification of the Stipulated Protective Order to include an AEO provision would be appropriate, given the United States' concern about the law enforcement sensitive nature of the material, and the stated need by the defense to review materials related to the reliability of the canine alert. Consequently, the Court **RECOMMENDS** the addition of the following AEO provisions to the July 8, 2016 Stipulated Protective Order:

> 8. The following categories of information contained in the July 22, 2016 *Ex Parte* Application for a Protective Order [Doc. No. 39] shall be deemed highly confidential Attorneys' Eyes Only ("AEO"):
>
> A. The names of breeder and other handlers who have taken care of Pecky;
> B. The physical locations where the government conducts canine certification testing;
> C. The height and depth information along with the weight of the controlled substances utilized to test the canine;
> D. The exact location and number of concealed persons utilized to test the canine.
>
> 9. The AEO material may only be viewed by the Federal Defenders assigned to the case, and their retained experts. The AEO material may only be utilized for the purpose of preparing the defense in the above captioned case. This includes investigating, preparing for trial, trial, and any appeals of this matter, and for no other purpose.
>
> 10. **The defendant is expressly precluded from viewing or learning of the content of the material designated as Attorneys' Eyes Only.** Every effort must be made by Federal Defenders and their experts to safeguard this information against inadvertent disclosure or review by any other person not expressly authorized pursuant to this Order.
>
> 11. Before any defense expert is given access to AEO material, he/she must be shown a copy of this Order and the Stipulated Protective Order and they must agree to be bound, in writing, by the terms of said Orders. The signed acknowledgement by the expert must be served on the government and filed with the Court. The government shall have two (2) Court days from the

date the signed acknowledgment is filed to object to the disclosure of AEO material to the identified expert. If no objection is filed, the defense may provide the material to the retained expert. By signing the document, the expert agrees to be subject to the jurisdiction of this Court, and to the terms of the Stipulated Protective Order and this Order, including the Attorneys' Eye Only provision. Failure to strictly abide by these provisions may result in the imposition of sanctions.

13. Only documents approved by this Court, after an in camera review, may be designated as Attorneys' Eyes Only.

## DOCUMENTS AT ISSUE

### 1. *Post Certification Canine Training Records*[3]

The government is in possession of certification training records concerning the performance of Pecky and Agent Barragan from 2010 to the present. There is no dispute that the post certification records are relevant to the reliability of the alert, however, the government asserts that certain information contained in the documents is subject to the law enforcement privilege ("LEP"). The government provided six exhibits to the Court with the *Ex Parte* Application for in camera review. [Doc. No. 39-1.] The documents contain proposed redactions the government seeks to withhold from the defendant under the LEP. In support of the LEP, the government provides the Declaration of Matthew Devaney, Canine Training Coordinator for U.S. Customs and Border Protection Canine Program. [Doc. No. 39-1 at 1.] Mr. Devaney explains that the redacted materials "may be used by criminals, drug trafficking organizations, and terrorists to 'reverse engineer' the training methods and techniques and would reasonably be expected to risk circumvention of the law." *Id.* at 3.

The proposed redactions can be broken down into one of four categories: (1) the names of the breeder and other handlers who have taken care of Pecky; (2) the physical

---

[3] At the August 24, 2016 Status Hearing, defense counsel stated that he would not seek pre-certification training records for Pecky if the government stipulated that the reliability of the dog was unknowable prior to official certification. The government agreed to the proposed stipulation. Accordingly, pre-certification training records are no longer at issue before the Court.

locations where the government conducts canine certification testing; (3) the height and depth information along with the weight of the controlled substances utilized to test the canine; and, (4) the exact location and number of concealed humans utilized to test Pecky.

Having considered the written and verbal arguments of the parties, the Court finds that there is a high risk of harm to the government should the proposed redacted material become publically known, and that the risk of disclosure is not mitigated by the existing Stipulated Protective Order. The Court further finds that the risk of prejudice to the defendant in utilizing an AEO provision in the Protective Order is *de minimis* given the technical nature of the information and its attenuated pertinence to the elements of the offense for which the defendant is charged.

In addition to the objection based on the law enforcement privilege, the government objects to the disclosure of any records that are older than three years because they "have limited relevance given the temporal scope of the request." [Doc. No. 39, at p. 8.] Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Old Chief v. United States*, 519 U.S. 172, 178 (1997) (*quoting* Fed.R.Eiv. 401). This Court finds the government's proposed three year limitation arbitrarily narrow.

The government has not produced any evidence indicating that documents older than three years lack relevance to the canine team's reliability. While it may be that the canine team did not have a "false alerts" or failures during the time period as represented by counsel at the August 24, 2016 hearing, the technical nature of the evidence precludes the Court from assuming that the material has "limited relevance" based exclusively on time limitations alone. Indeed, it is conceivable that a qualified expert looking at the lifespan of the team's performance might identify patterns or practices in Pecky's and/or Officer Barragan's performance which could potentially undermine the reliability of the alert. Consequently the government's objection is overruled.

The government, to the extent it has not already done so, shall provide the defense with both redacted copies of the post certification training documents and unredacted

copies of documents clearly labeled as Attorneys' Eyes Only, including those records dating back to 2010.[4] The same redactions and AEO designations, applicable to the records provided in Exhibit 3 to the *Ex Parte* Application, shall also apply to the pre-2013 records.

### 2. *Arrest Reports and the Annual Apprehension and Seizure Report*

Defendant asserts that "a K-9 detector team should keep a 'Deployment Log[5]'" as part of the team's operations. [Doc. No. 36, at p. 6.] The U.S. Customs and Border Patrol Canine Teams, however, do not keep "Deployment Logs." In place of such logs, defendant seeks all arrest reports generated on the basis of Pecky's alerts, and the Annual Apprehension and Seizure Reports.

In *United States v. Cedano-Arellano*, 332 F.3d 568, 573 (9th Cir. 2003), the Ninth Circuit held that discovery of the "qualifications of a dog used for drug detection is mandatory." When a defendant seeks to challenge the reliability of the alert in a motion to suppress, "Federal Rule of Criminal Procedure 16 compels the government to disclose the 'handler's log,' as well as 'training records and score sheets, certification recorders, and training standards and manuals' pertaining to the dog." *United States v. Thomas*, 726 F.3d 1086, 1096 (9th Cir. 2013) (*citing Cedano-Arellano*, 332 F.3d at 570-71).

Here, defendant has failed to show how the arrest records for other defendants on different days and different times in which Pecky played a role are material to assessing the reliability of the canine detection team subject to analysis in his case. The arrest records provided to the Court for in camera review reveal prototypical police reports setting forth, in narrative form, the events that ultimately lead to the discovery of illegal substances at the Highway 86 stop for the individually named defendants, other than this defendant. No

---

[4] The government asserts that the records created before 2010 were lost when they transitioned, well before the defendant's arrest, to a new computer system. [Doc. No. 39, at p. 5, fn 5.]

[5] As defense counsel explained at the Status Hearing, a "Deployment Log" is a record the handler keeps of the circumstances surrounding each alert. Defendant asserts that the log is utilized to assess the reliability of the teams.

evidence has been submitted nor argument proffered, beyond mere speculation, to support the relevance of narrative reports concerning other defendants. These reports have no apparent bearing on Pecky's or Agent Barragan's reliability.[6] Indeed the very information that would prove probative to the team's reliability, *i.e.*, evidence of false alerts, would not be found in "arrest records" in other cases, where illegal substances *were* found. Consequently, the request for discovery of the arrest records associated with the canine detection team for other defendants is **DENIED**.

The Annual Apprehension and Seizure Reports ("Annual Reports") contain the total weight and estimated dollar value, along with the number of seizures resulting from Pecky's annual alerts.[7] They also provide the aggregate totals associated with Pecky's performance during the entire duration of her deployment as a detection canine. The government objects to the disclosure of these Reports because of their limited relevance. While the figures in the Reports may have limited relevance when standing alone, the information may have relevance when compared to other canine discovery. During the Status Hearing, the government argued alternatively, that if the Court ordered the documents produced, they should be permitted to redact the dollar amounts contained in the Reports. The defense had no objection to such a redaction. Accordingly, the defense request for the Annual Reports is **GRANTED**. The government is **ORDERED** to serve a copy of the Annual Reports, with the dollar amounts redacted, in accordance with the timeline set forth below.

///

---

[6] Furthermore, at the August 24, 2016 Status Hearing, government counsel asserted that the arrest reports involving Pecky are not maintained in a centralized database indexed to Pecky or Officer Barragan. The two reports provided as examples to the Court, the government asserts, were only discovered because Agent Barragan remembered the names of the defendants. *See* [Doc. No. 39-1, Ex. 6.]

[7] In addition to drugs, the Reports also have a category entitled "Humans," however there is no key providing further information as to the meaning of the category.

### 3. *Veterinarian and Kennel Records*

The final set of disputed records concern the veterinarian records and kennel records for Pecky.[8] The government asserts that the only kennel records available for Pecky are the annual inspections reports conducted of Officer Barragan's home where Pecky is kept. These records were not submitted to the Court for an in camera review.

The government asserts that the veterinarian and kenneling records are not probative of the reliability of Pecky's performance. The defense counters by providing a portion of the Performance Standards for CBP Detection Handlers Courses. [Doc. No. 36-1, at p. 14] The exhibits provided by the defendant indicate that the records defendant seeks are potentially material to assessing the reliability of Pecky's performance. The training instructions provide strict guidelines for the care and grooming of the canines, including instructions that the canine must be "physically separated from other canines." *Id.* The emphasis on the high level of grooming and care suggest that health and environmental changes might impact Pecky's performance.

Accordingly, the defense Motion to Compel the veterinarian records and the kenneling reports of Agent Barragan's annual home inspection reports is **GRANTED**. Any addresses, locations, or other identifying information in the records shall be redacted and not subject to any type of disclosure.[9] Additionally, given the possibility that the description in the kenneling records could lead to the discovery of Agent Barragan's home address, the entire annual kennel report shall be deemed Attorneys' Eyes Only and produced accordingly.

### 4. *Highway 86 Checkpoint*

Finally, the defense seeks evidence related to the constitutionality of the Highway 86 Checkpoint. [Doc. No. 16, at p. 15-17] (the request includes, *inter alia*, items such as

---

[8] At the August 24, 2016 Status Hearing, government counsel explained that kennel records are those documents that record the conditions of how the dog is cared for.

[9] Pecky's and Agent Barragan's names shall not be redacted from the records.

9

"[a]ny and all statistics regarding the number of vehicles that have been searched . . . at the Highway 86 Checkpoint"); *see also id.* at 17 (requesting "[t]he number of other arrests at the Checkpoint related to open warrants, firearm offenses, and any other offenses.") The government asserts that the defense is not entitled to the requested Checkpoint discovery because it is not "material to the defense." [Doc. No. 21, at p. 19.]

Federal Rule of Criminal Procedure 16(a)(1)(E)(i), upon request from the defense, requires the disclosure of documents "material" to preparing the defense. In *United States v. Armstrong*, 517 U.S. 456, 462 (1996), the Court held that "material to the preparation" of the defense does not apply to documents that constitute a "sword" for attacking the government's case, but rather applies to evidence that constitutes a "shield" to the government's case-in-chief. *Id.* The Ninth Circuit has held that "materiality is a low threshold" which is satisfied when the information sought would help the defendant prepare his or her defense. *United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013).

Here, the defendant fails to demonstrate the materiality of the requested documents to this defense. First, defendant fails to make the requisite prima facie showing of materiality as required by Rule 16. *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990) ("to obtain discovery under Rule 16, a defendant must make a prima facie showing of materiality.") In support of his Motion he provides nothing more than conjecture and quotations from Judge Kozinski's dissent in *United States v. Soyland*, 3 F.3d 1312, 1318 (9th Cir. 1993) (Kozinski, J., dissent). [Doc. No. 16-1, at p. 12-15.] To establish materiality, however, defendant must present more than conclusory allegations of materiality. *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990). Second, the information defendant seeks is the same classical "sword" evidence described in *United States v. Chon*, 210 F.3d 990, 994 (9th Cir. 2000). In *Chon,* the defendant sought information regarding the Naval Criminal Investigative Service's ("NCIS") activities that "target[ed] civilians" and sought to suppress the evidence collected by NCIS against him under a theory that it had violated the Posse Comitatus Act. *Id.* at 994-995, citing *United*

*States v. Armstrong, supra*, the Ninth Circuit concluded the defendant was only entitled to "discovery of only those materials that are relevant to the defendant's response to the Government's case in chief...." *Id.* at 995.

The evidence defendant seeks pertaining to the Highway 86 Checkpoint is not relevant to the government's case in chief. Similar to *Chon*, defendant seeks the evidence for a collateral attack on alleged procedural violations. Such evidence is "considerably broader and . . . do[es] not serve the purpose of fortifying the appellants 'shield claims.'" *Id.* Accordingly, the defendant's request for information related to the Highway 86 Checkpoint is **DENIED**.

## CONCLUSION

For the reasons outlined above, this Court finds that defendant's Motion to Compel is **GRANTED** in part and **DENIED** in part. [Doc. No. 36] (under seal). Additionally, the government's *Ex Parte* Application for Protective Order is **DENIED**. [Doc. No. 39] (under seal).

**IT IS HEREBY RECOMMENDED** that the District Court issue an order adding the following AEO provisions to the July 8, 2016 Stipulated Protective Order:

> 8. The following categories of information contained in the July 22, 2016 *Ex Parte* Application for a Protective Order [Doc. No. 39] shall be deemed highly confidential Attorneys' Eyes Only ("AEO"):
>
> A. The names of breeder and other handlers who have taken care of Pecky;
> B. The physical locations where the government conducts canine certification testing;
> C. The height and depth information along with the weight of the controlled substances utilized to test the canine;
> D. The exact location and number of concealed persons utilized to test the canine.
>
> 9. The AEO material may only be viewed by the Federal Defenders assigned to the case, and their retained experts. The AEO material may only be utilized for the purpose of preparing the defense in the above captioned case. This includes investigating, preparing for trial, trial, and any appeals of this matter, and for no other purpose.

10. **The defendant is expressly precluded from viewing or learning of the content of the material designated as Attorneys' Eyes Only.** Every effort must be made by Federal Defenders and their experts to safeguard this information against inadvertent disclosure or review by any other person not expressly authorized pursuant to this Order.

11. Before any defense expert is given access to AEO material, he/she must be shown a copy of this Order and the Stipulated Protective Order and they must agree to be bound, in writing, by the terms of said Orders. The signed acknowledgement by the expert must be served on the government and filed with the Court. The government shall have two (2) Court days from the date the signed acknowledgment is filed to object to the disclosure of AEO material to the identified expert. If no objection is filed, the defense may provide the material to the retained expert. By signing the document, the expert agrees to be subject to the jurisdiction of this Court, and to the terms of the Stipulated Protective Order and this Order, including the Attorneys' Eye Only provision. Failure to strictly abide by these provisions may result in the imposition of sanctions.

13. Only documents approved by this Court, after an in camera review, may be designated as Attorneys' Eyes Only.

**IT IS HEREBY ORDERED THAT**:

1. Defendant's Motion to Compel discovery of the post certification training records is **GRANTED** in part and **DENIED** in part. The government is to produce, to the extent it has not already done so, copies of redacted and unredacted of the post certification training documents marked as AEO, including documents dating back to 2010. The same redactions and AEO designations, applicable to the records provided in Exhibit 3 to the *Ex Parte* Application shall also apply to the pre-2013 records.
2. Defendant's Motion to Compel discovery of the arrest records associated with the canine detection team is **DENIED**.

3. Defendant's Motion to Compel Annual Reports is **GRANTED**. The government is **ORDERED** to serve a copy of the Annual Reports, with the dollar amounts redacted, in accordance with the timeline set forth herein.

4. Defendant's Motion to Compel the veterinarian records and the annual kenneling reports of Agent's Barragan's home inspection reports is **GRANTED**. Any addresses, locations, or other identifying information in the records, with the exception of Pecky and Agent Barragan's names, shall be redacted.

5. Defendant's Motion to Compel discovery related to the Highway 86 Checkpoint is **DENIED**.

Documents subject to production pursuant to this Order shall be produced within 14 days of the filing of this Order.

Dated: September 7, 2016

Hon. Karen S. Crawford
United States Magistrate Judge